## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDWARD JOHNSON,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:22-cv-01048** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **SUPERINTENDENT RIVELLO, et al.,** | : | |
| **Defendants** | : | |

### MEMORANDUM

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983. Presently before the Court are three motions to dismiss pro se Plaintiff Edward Johnson ("Plaintiff" or "Johnson")'s complaint. (Doc. Nos. 14, 26, 31.) For the following reasons, the motions filed by Defendants Nalley ("Nalley") and Mahli ("Mahli") will be denied, the motion filed by Defendants Rivello, Spyker, Wakefield, McMahon, Parsons, Hawn, Price, and Lynch (collectively, the "DOC Defendants") will be granted in part and denied in part, and Plaintiff's claims against all defendants other than Defendants Nalley, Mahli, and Lynch ("Lynch") will be dismissed without prejudice.

## I.    BACKGROUND

Johnson initiated this case through the filing of a complaint on June 27, 2022, which the Court received and docketed on July 6, 2022. (Doc. No. 1.) According to the allegations in the complaint, Johnson was incarcerated in Huntingdon State Correctional Institution ("SCI-Huntingdon") in May 2020 when he began to feel queasy while taking a shower. (Doc. No. 1 ¶ 16.) He returned to his cell, drank some water from the sink, and began experiencing a variety of symptoms approximately ten minutes later, including stomach cramps, bloating, constipation, blurry vision, racing heart, low energy, fatigue, inability to burp, difficulty breathing, shortness of breath, faintness, excessive phlegm, inability to read or write, and occasional inability to eat.

(Id.)  Because of the symptoms, he was sometimes unable to get out of bed for 1–6 hours at a time.  (Id.)

Sometime between May 11, 2020 and May 14, 2020, a nurse came to Johnson's cell to examine him.  (Id. ¶ 17.)  The nurse took his vitals and scheduled him for a sick call the following day.  (Id.)  The next day, he allegedly saw Defendant Nalley, a physician's assistant in the prison, for sick call.  (Id. ¶ 18.)[1]  Nalley stated that she was going to give him Gas-X pills and order blood work, but she allegedly failed to take either action.  (Id.)

Johnson experienced severe symptoms on May 22, 2020.  (Id. ¶ 19.)  A nurse was called to the cell and told him that he should sign up for sick call.  (Id.)  Johnson did so but was never seen for a corresponding sick call.  (Id.)  On June 10, 2020, Johnson again drank water and began having symptoms.  (Id. ¶ 20.)  A correctional officer called the medical department and stated that he was experiencing strange symptoms.  (Id.)  The officer was told to send Johnson back to his cell and instruct him to submit a sick call request.  (Id.)  Johnson did so but was never seen by the medical department.  (Id.)

The complaint alleges that Johnson was unable to work between June 10, 2020 and June 25, 2020 due to the severity of his symptoms.  (Id. ¶ 21.)  On June 29, 2020, his work supervisor instructed an officer on Johnson's housing block that he was not to return to work until he had been seen by a doctor.  (Id. ¶ 22.)  Johnson completed a sick call request slip that day.  (Id. ¶ 23.)

On June 30, 2020, Defendant Nalley came to Johnson's cell.  (Id. ¶ 24.)  Nalley instructed him to stop drinking water from the sink and to instead order juice from the

---

[1]  The complaint alleges that Johnson saw "P.A. Gabby."  (Doc. No. 1 ¶ 18.)  The complaint speculates that Defendant Nalley "is also called 'Gabby,'" but acknowledges that Johnson is "[n]ot for sure" about this point.  (Id. ¶ 13.)  The Court liberally construes all references to "Gabby" in the complaint as references to Defendant Nalley.

commissary.  (Id.)  The correctional officer escorting her stated that Johnson would still have to drink and that he should use the water, but Nalley allegedly screamed, "Don't drink the water, buy juice off the cart" and stormed away.  (Id.)

On July 22, 2020, Johnson was given blood work by the medical department and told that he was scheduled to see a doctor, but he did not see a doctor at that time.  (Id. ¶ 26.)  Johnson spoke with his counselor, Defendant Hawn ("Hawn"), about the situation on July 26, 2020.  (Id. ¶ 27.)  Hawn allegedly emailed the prison's correctional healthcare administrator, Defendant Price ("Price").  (Id.)  Price did not come to see Johnson, but he was given Vitamin D pills by an unnamed official.  (Id.)

Around this time, Johnson began experiencing severe symptoms and asked Sergeant Embler ("Embler") to call the medical department on his behalf.  (Id. ¶ 28.)  The medical department explained that Johnson was experiencing indigestion and said that they would bring him a "cocktail."  (Id.)  After taking the cocktail, Johnson drank some water and was then unable to get out of bed for six hours.  (Id.)  The complaint alleges that nobody checked on him during this period.  (Id.)

Johnson raised his concerns about his lack of treatment to several prison officials between August 4, 2020 and August 10, 2020, including Price, Deputy Spyker ("Spyker"), Major House ("House"), and Major Loy ("Loy").  (Id. ¶ 29.)  Loy and House informed him that they could not direct the medical department what to do and could only forward his requests to the department.  (Id.)  Spyker stated that he advanced Johnson's concerns to Price and that Price was going to give him "vomiting pills" and that Johnson should take the pills and work with the medical department on his treatment.  (Id.)  Johnson again stated that he needed to see a doctor because his symptoms were severe.  (Id.)

Johnson's symptoms began to be so severe that he allegedly contemplated suicide.  (Id. ¶ 30.)  He tried to speak with the prison psychologist, McMahon ("McMahon") about his mental health concerns, but McMahon did not come to see him.  (Id.)  Hawn allegedly explained to Johnson that McMahon could not visit him because of COVID-19 restrictions.  (Id.)

Sometime between August 15, 2020 and August 18, 2020, Johnson's unit manager, Ms. George ("George") allegedly called the medical department and stated that Johnson needed to see a doctor.  (Id. ¶ 32.)  Johnson was escorted to the medical department, where he was seen by Defendant Mahli ("Mahli"), a doctor in the prison.  (Id. ¶ 33.)  After Mahli took Johnson's vitals, Johnson explained to him that he was allergic to bleach and that he believed his symptoms were caused by the prison putting bleach in the water.  (Id.)  Mahli allegedly stated that he did not know what was causing Johnson's symptoms and that there was nothing he could do for him.  (Id.)  He prescribed him Prilosec and "platonics."[2]  (Id.)

In September 2020, Hawn called Johnson to her office and stated her belief that Johnson's symptoms were only in his mind.  (Id. ¶ 34.)  She directed Johnson to see a mental health professional in the prison, Mr. Parsons ("Parsons"), because she believed that he was having anxiety attacks.  (Id.)  Parsons spoke with Johnson shortly thereafter and Johnson explained that he thought his symptoms were from drinking the prison water but that nobody would allow him to drink water in front of him so that they could see the symptoms that manifested.  (Id. ¶ 35.)  Parsons stated that he would watch Johnson drink the water, but when Johnson got the water, Parsons refused to watch him drink it.  (Id.)  During this conversation,

---

[2]  It is unclear which medication this is meant to reference.  Based on the Court's independent research, the similar name, and the use of the medication to treat acid reflux and related conditions, the Court assumes "platonics" is meant as a reference to Protonix.  See Protonix, WEBMD, https://www.webmd.com/drugs/2/drug-18142/protonix-oral/details (last visited July 31, 2023).

Parsons called "Grace" on the telephone, who allegedly told him that she used a cap of bleach to clean bacteria from the prison's water pipes but that once the bleach ran through the lines the water was again safe to drink.  (Id.)  Johnson told Parsons that he was allergic to bleach.  (Id.)  Parsons agreed with Hawn that Johnson was suffering from anxiety attacks.  (Id.)

Around this time, Defendant Lynch, a supervising nurse in the prison, called Johnson to the medical department.  (Id. ¶ 36.)  Lynch told Johnson that he did not want to hear about Johnson's stomach and that Johnson's complaints were "getting old."  (Id.)  Lynch stated his belief that Johnson's refusal to drink the prison water constituted a food strike and that he wanted to have Johnson "locked up" for the food strike.  (Id.)  Lynch prescribed him "Benty and Galvascon."[3]  (Id. ¶ 37.)

The next day, Johnson saw Defendant Mahli, who stated that he did not know what was causing Johnson's symptoms and that he was on a waiting list to be seen at an outside hospital.  (Id. ¶ 38.)  Mahli speculated that the symptoms may be caused by Johnson losing weight, but Johnson explained that his current weight was his natural weight.  (Id.)  Mahli prescribed him Ensure drinks, a stool softener, Fiber-Lax, and Dimenhydrinate.  (Id.)

Johnson went to see Mahli again shortly after this visit and Mahli allegedly stated, "you keep putting in sick-call slips and again I don't know what to do for you, what do you want me to do?"  (Id. ¶ 39.)  Johnson picked up a cup of water and asked Mahli if he could drink it in front of him to demonstrate the symptoms he was suffering.  (Id.)  Mahli allegedly responded,

---

[3]  Based on independent research, the Court assumes these are meant as references to Bentyl and Gaviscon.  See Bentyl 10 Mg /5 Ml Oral Syrup – Uses Side Effects, and More, WEBMD, https://www.webmd.com/drugs/2/drug-5245/bentyl-oral/details (last visited July 31, 2023); Gaviscon Tablet, Chewable – Uses, Side Effects, and More, WEBMD, https://www.webmd.com/drugs/2/drug-18801-5123/gaviscon-oral/aluminum-magnesium-antacid-oral/details (last visited July 31, 2023).

"no, you can't drink that here we don't know if you put something in it or not." (Id.)  Johnson then asked if Mahli would get him a cup of water to drink but Mahli refused. (Id.)  Johnson asked if Mahli would admit him for observation, but Mahli again refused. (Id.)

The complaint alleges that Johnson suffered symptoms of varying severity every day between May 2020 and November 2021. (Id. ¶ 40.)  In December 2021, he was called for a phone conference with an outside doctor. (Id. ¶ 41.)  Mahli also participated in the conference and told the doctor that Johnson was being sent for an outside consultation because of his weight loss. (Id.)  Johnson explained to the contrary that he thought his symptoms were being caused by drinking the prison's water. (Id.)  Johnson was told on the call that he would be sent to an outside hospital in February 2022. (Id.)

Johnson was given blood work in February and March of 2022 but was not taken to an outside hospital. (Id. ¶ 42.)  Johnson asked the nurse administering the blood work why he had not been sent to the hospital and the nurse said that he was anemic and that he needed to put in a sick call slip to be seen by a prison doctor. (Id.)

Johnson put in a sick-call slip and was seen by Defendant Nalley on March 14, 2022. (Id. ¶ 43.)  Nalley explained to Johnson that he would be seen at an outside hospital soon and that the prison medical staff knew he had been anemic since 2016. (Id.)  Nalley allegedly stated that the staff believed his symptoms were caused by his anemia. (Id.)  Johnson was sent to an outside hospital later in March 2022, where he was diagnosed with Helicobacter pylori ("H. pylori"), a bacterial infection. (Id. ¶ 44.)

The complaint asserts claims for violation of the Eighth Amendment and negligence under Pennsylvania law.  Johnson seeks damages, injunctive relief, and declaratory relief. (Id. at 26.)  The complaint names as defendants Spyker, Mahli, Lynch, Nalley, McMahon, Parsons, and

Price, along with Rivello, the prison's facility manager, and Wakefield, the prison's grievance coordinator.  (Id. at 1–3.)

The DOC Defendants filed a motion to dismiss the complaint on September 27, 2022. (Doc. No. 14.)  Defendants Nalley and Mahli filed separate motions to dismiss the complaint on January 24, 2023 and February 8, 2023, respectively.  (Doc. Nos. 26, 31.)  Johnson opposed the DOC Defendants' motion to dismiss on November 25, 2022, (Doc. No. 19), but has not opposed the motions filed by Nalley and Mahli.  The deadline for Johnson to oppose the motions has expired under the Local Rules.  Accordingly, all three motions are ripe for resolution.

## II.      LEGAL STANDARDS

### A.      Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims

are facially plausible.  See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted).  The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the Court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Pro se complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle, 429 U.S. at 106).

**B.      Section 1983 Standard**

Section 1983 is the vehicle by which private citizens may seek redress for violations of

federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.  The statute

states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress.

Id.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to

vindicate violations of federal law committed by state actors."  See Pappas v. City of Lebanon,

331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284–

85 (2002)).  To state a cause of action under Section 1983, a plaintiff must allege that: (1) the

conduct complained of was committed by persons acting under color of state law; and (2) the

conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United

States.  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West

v. Atkins, 487 U.S. 42, 48 (1988)).

**III.     DISCUSSION**

**A.      Motions to Dismiss**

The DOC Defendants advance four arguments for dismissal: (1) that the complaint

should be dismissed because a significant portion of it is illegible; (2) that the complaint should

be dismissed as an impermissible shotgun pleading; (3) that the claims against the DOC

Defendants should be dismissed for failure to state a claim upon which relief may be granted;

and (4) that the official capacity claims should be dismissed under the Eleventh Amendment.

(Doc. No. 15.)  Defendants Nalley and Mahli argue that the claims against them should be

dismissed for failure to state a claim upon which relief may be granted and that the negligence claims are additionally subject to dismissal because Johnson has not filed a certificate of merit as required by Pennsylvania Rule of Civil Procedure 1042.3.  (Doc. Nos. 27, 32.)

The DOC Defendants' argument that the complaint should be dismissed as illegible is unavailing.  Although certain portions of the complaint are written in faded ink, likely due to Johnson's typewriter running out of ink as he was writing the complaint, the Court was able to read the entirety of the complaint with the exception of 10–20 stray words, which can largely be understood from context.

The Court also finds the DOC Defendants' argument that the complaint should be dismissed as a shotgun pleading unavailing.  A shotgun pleading is one that asserts a large number of claims against defendants without giving the defendants adequate notice of the grounds on which the claims rest.  See Litwak v. Tomko, No. 3:16-cv-00446, 2018 WL 1378633, at *5 (M.D. Pa. Mar. 19, 2018).  Dismissal of a complaint as a shotgun pleading is generally reserved for a complaint that is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."  See Dudley v. SCI Camp Hill, No. 1:20-cv-00523, 2020 WL 5893968, at *4 (M.D. Pa. Oct. 5, 2020).  Here, the Court has no difficulty understanding the substance of Johnson's claims, and it appears that the DOC Defendants have also not had any difficulty understanding the claims, as they note that "his core claims can be summarized concisely: over the course of two years, Defendants failed to properly diagnose and treat his bacterial stomach infection."  (Doc. No. 15 at 5.)

The Court agrees with the DOC Defendants, however, that Johnson's official capacity claims against the Defendants are properly dismissed.  DOC employees sued in their official capacities are entitled to sovereign immunity under the Eleventh Amendment from claims for

damages brought pursuant to Section 1983, and Pennsylvania has not waived this sovereign

immunity.  See Downey v. Pa. Dep't of Corrs., 968 F.3d 299, 310–11 (3d Cir. 2020).

Accordingly, the Court will dismiss all of Johnson's official capacity claims.

As a final threshold matter, the Court is unpersuaded by Defendants Nalley and Mahli's

argument that Johnson's negligence claim must be dismissed for failure to file a certificate of

merit.  Under Pennsylvania Rule of Civil Procedure 1042.3, a plaintiff must file a certificate of

merit in any case in which the plaintiff alleges that "a licensed professional deviated from an

acceptable professional standard" within sixty days after filing the complaint.  See Pa. R. Civ. P.

1042.3.  Rule 1042.3 is substantive law that must be applied by United States District Courts

when considering a claim of malpractice or negligence under Pennsylvania law.  See Liggon-

Redding v. Estate of Sugerman, 659 F.3d 258, 264–65 (3d Cir. 2011).

Under Pennsylvania Rule of Civil Procedure 1042.7, defendants may not seek dismissal

of a claim based on the lack of a certificate of merit unless the defendants have provided thirty

days' notice prior to seeking dismissal.  See Pa. R. Civ. P. 1042.7(a)(4); see also Schmigel v.

Uchal, 800 F.3d 113, 124 (3d Cir. 2015) ("The condition of thirty days' notice prior to seeking

dismissal of an action for failure to comply with the COM regime is substantive and must be

applied in federal court.  Uchal was therefore required to provide Schmigel with notice before he

had a right to dismiss this action, and his failure to do so requires reinstatement of this action in

the District Court.").

Accordingly, the Court finds unavailing Defendants' argument that the negligence claim

must be dismissed for failure to file a certificate of merit because Defendants failed to provide

the requisite 30 days' notice prior to seeking dismissal of the claim.  Defendant Nalley filed a

notice of intent to move to dismiss the negligence claim on the same day she filed her motion to

dismiss, while Defendant Mahli filed a notice of intent to move to dismiss the negligence claim

one day before filing his motion to dismiss.  See (Doc. Nos. 25, 30).  Accordingly, the Court

must deny their motions without prejudice on this basis.  See Schmigel, 800 F.3d at 124; accord

Sutton v. Noel, No. 1:19-cv-02080, 2021 WL 4860772, at *6 (M.D. Pa. Oct. 19, 2021).[4]

Turning to Defendants' arguments for dismissal on the merits, the Court agrees with the

DOC Defendants that dismissal of the claims against all non-medical Defendants is appropriate.

When a prisoner plaintiff is under the care of medical professionals, non-medical prison officials

cannot be held liable for deliberate indifference to the plaintiff's serious medical need unless they

had "a reason to believe (or actual knowledge) that prison doctors or their assistants are

mistreating (or not treating) a prisoner."  See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004).

Here, it is clear from the complaint that the non-medical Defendants deferred all decisions

regarding Johnson's medical care to the medical professionals treating him and there are no

allegations showing that the non-medical defendants had reason to believe that the medical

professionals were mistreating or failing to treat him.  Accordingly, because it appears from the

complaint that Nalley, Mahli, and Lynch are the only Defendants who were medical

professionals providing care to Johnson, the claims against all Defendants other than Nalley,

Mahli, and Lynch will be dismissed.

---

[4] While there is some authority to suggest a finding that that the notice required by Rule 1042.7 may be satisfied by the filing of a motion to dismiss, see Folk v. Bureau of Prisons, No. 21-1543, 2021 WL 3521143, at *2 (3d Cir. Aug. 11, 2021), the Court reads Schmigel to require Defendants to provide thirty days notice to Plaintiff prior to seeking dismissal of the negligence claim for failure to file a certificate of merit.  See Schmigel, 800 F.3d at 124 (noting that defendant must provide thirty days' notice "prior to seeking dismissal").  Hence, the Court follows the controlling precedent of Schmigel and concludes that Defendants needed to provide thirty days' notice prior to seeking dismissal of the negligence claim for failure to file a certificate of merit.

The Court will not dismiss the claims against Nalley, Mahli, and Lynch.  Johnson asserts

claims for deliberate indifference to a serious medical need and negligence against these

Defendants.[5]  To state a claim for deliberate indifference to a serious medical need, a plaintiff

must allege: "(i) a serious medical need, and (ii) acts or omissions by prison officials that

indicate deliberate indifference to that need."  See Natale v. Camden Cty. Corr. Facility, 318

F.3d 575, 582 (3d Cir. 2003) (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)).  To

state a claim for negligence, a plaintiff must allege (1) that the defendant owed the plaintiff a

duty of care; (2) that the defendant breached the duty; (3) that the defendant's breach was the

proximate cause of the plaintiff's injury; and (4) that the plaintiff suffered damages as a result.

See Brewington ex rel. Brewington, 199 A.3d 348, 355 (Pa. 2018).

Here, the complaint plausibly alleges that Defendants Nalley, Mahli, and Lynch largely

ignored Johnson's reported symptoms and declined to send him to a hospital over a period of

nearly two years, which resulted in significantly delayed treatment of his H. pylori infection.

The Court finds these allegations sufficient to state claims for deliberate indifference to a serious

medical need and negligence.

**B.    Leave to Amend**

Courts are cautioned that because of the applicable pleading standard, a plaintiff should

generally be granted leave to amend before dismissing a claim that is merely deficient.  See

Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The federal rules allow for

---

[5]  The DOC Defendants have advanced numerous arguments addressing various other claims that
they believe could be gleaned from a liberal construction of the complaint.  See (Doc. No. 15).
The Court does not construe the complaint to advance any claims other than deliberate
indifference to a serious medical need and negligence.  Accordingly, the Court's analysis of the
merits of the complaint addresses only those claims.  To the extent Johnson intends to assert
other claims, the claims are not pled with sufficient specificity and are therefore dismissed
without prejudice.

liberal amendment in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  See Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted).  The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment."  See id.  Based on the foregoing, the Court will grant Johnson leave to amend his complaint because the Court cannot conclude that amendment of the complaint would be futile or unjust.

## IV.   CONCLUSION

For the foregoing reasons, the motions to dismiss filed by Defendants Nalley and Mahli will be denied, the motion to dismiss filed by the DOC Defendants will be granted in part and denied in part, and plaintiff's claims against all Defendants other than Nalley, Mahli, and Lynch will be dismissed without prejudice.  An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania