IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EDWARD JOHNSON,                    :
    Plaintiff              :
                      :      No. 1:22-cv-01048
    v.                     :
                      :      (Judge Kane)
MEDICAL DOCTOR MAHLI, et al.,      :
    Defendants             :

## MEMORANDUM

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983. Pro se Plaintiff Edward Johnson ("Johnson") alleges deliberate indifference in violation of the Eighth Amendment and negligence under Pennsylvania law related to an alleged failure to diagnose Johnson's bacterial infection for a significant period of time by Defendants Mahli, Nalley, and Lynch ("Defendants"),[1] who were all acting as medical professionals in Huntingdon County State Correctional ("SCI-Huntingdon") during the period of time relevant to this case. Presently before the Court is a motion to dismiss filed by Defendants Mahli and Nalley, which seeks to dismiss Johnson's negligence claim against them for failure to file a certificate of merit as required by Pennsylvania Rule of Civil Procedure 1042.3.[2] (Doc. No. 55.) For the following reasons, the motion will be granted.

## I.    BACKGROUND

Johnson initiated this case through the filing of a complaint on June 27, 2022, which the Court received and docketed on July 6, 2022. (Doc. No. 1.) According to the allegations in the

---

[1] As noted below, all Defendants other than Mahli, Nalley, and Lynch have been dismissed from this case. The Court will accordingly refer to Mahli, Nalley, and Lynch as "Defendants" throughout this opinion.

[2] Defendant Lynch has not joined in the motion to dismiss.

complaint, Johnson was incarcerated in SCI-Huntingdon in May 2020 when he began to feel queasy while taking a shower.  (Doc. No. 1 ¶ 16.)  He returned to his cell, drank some water from the sink, and began experiencing a variety of symptoms approximately ten minutes later, including stomach cramps, bloating, constipation, blurry vision, racing heart, low energy, fatigue, inability to burp, difficulty breathing, shortness of breath, faintness, excessive phlegm, inability to read or write, and occasional inability to eat.  (Id.)  Because of the symptoms, he was sometimes unable to get out of bed for 1–6 hours at a time.  (Id.)

Sometime between May 11, 2020 and May 14, 2020, a nurse came to Johnson's cell to examine him.  (Id. ¶ 17.)  The nurse took his vitals and scheduled him for a sick call the following day.  (Id.)  The next day, he allegedly saw Defendant Nalley, a physician's assistant in the prison, for sick call.  (Id. ¶ 18.)[3]  Nalley stated that she was going to give him Gas-X pills and order blood work, but she allegedly failed to take either action.  (Id.)

Johnson allegedly experienced severe symptoms on May 22, 2020.  (Id. ¶ 19.)  A nurse was called to the cell and told him that he should sign up for sick call.  (Id.)  Johnson did so but was never seen for a corresponding sick call.  (Id.)  On June 10, 2020, Johnson again drank water and began having symptoms.  (Id. ¶ 20.)  A correctional officer called the medical department and stated that he was experiencing strange symptoms.  (Id.)  The officer was told to send Johnson back to his cell and instruct him to submit a sick call request.  (Id.)  Johnson did so but was never seen by the medical department.  (Id.)

---

[3]  The complaint alleges that Johnson saw "P.A. Gabby."  (Doc. No. 1 ¶ 18.)  The complaint speculates that Defendant Nalley "is also called 'Gabby,'" but acknowledges that Johnson is "[n]ot for sure" about this point.  (Id. ¶ 13.)  The Court liberally construes all references to "Gabby" in the complaint as references to Defendant Nalley.

The complaint alleges that Johnson was unable to work between June 10, 2020 and June 25, 2020 due to the severity of his symptoms.  (Id. ¶ 21.)  On June 29, 2020, his work supervisor instructed an officer on Johnson's housing block that he was not to return to work until he had been seen by a doctor.  (Id. ¶ 22.)  Johnson completed a sick call request slip that day.  (Id. ¶ 23.)

On June 30, 2020, Defendant Nalley came to Johnson's cell.  (Id. ¶ 24.)  Nalley instructed him to stop drinking water from the sink and to instead order juice from the commissary.  (Id.)  The correctional officer escorting her stated that Johnson would still have to drink and that he should use the water, but Nalley allegedly screamed, "Don't drink the water, buy juice off the cart" and stormed away.  (Id.)

On July 22, 2020, the medical department ordered blood work for Johnson and told him that he was scheduled to see a doctor, but he did not see a doctor at that time.  (Id. ¶ 26.)  Johnson spoke with his counselor about the situation on July 26, 2020.  (Id. ¶ 27.)   The counselor allegedly emailed the prison's correctional healthcare administrator.  (Id.)  The correctional healthcare administrator did not come to see Johnson, but he was given Vitamin D pills by an unnamed official.  (Id.)

Around this time, Johnson began experiencing severe symptoms and asked a sergeant to call the medical department on his behalf.  (Id. ¶ 28.)  The medical department explained that Johnson was experiencing indigestion and said that they would bring him a "cocktail."  (Id.)  After taking the cocktail, Johnson drank some water and was then unable to get out of bed for six hours.  (Id.)  The complaint alleges that nobody checked on him during this period.  (Id.)

Johnson raised his concerns about his lack of treatment to several prison officials between August 4, 2020 and August 10, 2020.  (Id. ¶ 29.)  Johnson's symptoms began to be so severe that he allegedly contemplated suicide.  (Id. ¶ 30.)  He tried to speak with the prison

psychologist about his mental health concerns, but the psychologist did not come to see him, purportedly because of COVID-19 restrictions.  (Id.)

Sometime between August 15, 2020 and August 18, 2020, Johnson's unit manager allegedly called the medical department and stated that Johnson needed to see a doctor.  (Id. ¶ 32.)  Johnson was escorted to the medical department, where he was seen by Defendant Mahli ("Mahli"), a doctor in the prison.  (Id. ¶ 33.)  After Mahli took Johnson's vitals, Johnson explained to him that he was allergic to bleach and that he believed his symptoms were caused by the prison putting bleach in the water.  (Id.)  Mahli allegedly stated that he did not know what was causing Johnson's symptoms and that there was nothing he could do for him but prescribed him medication.  (Id.)

In September 2020, Johnson was directed to see a mental health professional in the prison, Mr. Parsons ("Parsons").  (Id.)  Parsons spoke with Johnson shortly thereafter and Johnson explained that he thought his symptoms were from drinking the prison water but that nobody would allow him to drink water in front of him so that they could see the symptoms that manifested.  (Id. ¶ 35.)  Parsons stated that he would watch Johnson drink the water, but when Johnson got the water, Parsons refused to watch him drink it.  (Id.)  During this conversation, Parsons called "Grace" on the telephone, who allegedly told him that she used a cap of bleach to clean bacteria from the prison's water pipes but that once the bleach ran through the lines the water was again safe to drink.  (Id.)  Johnson told Parsons that he was allergic to bleach.  (Id.)  Parsons purportedly stated his belief that Johnson was suffering from anxiety attacks.  (Id.)

Around this time, Defendant Lynch, a supervising nurse in the prison, called Johnson to the medical department.  (Id. ¶ 36.)  Lynch told Johnson that he did not want to hear about Johnson's stomach and that Johnson's complaints were "getting old."  (Id.)  Lynch stated his

4

belief that Johnson's refusal to drink water constituted a food strike and that he wanted to have Johnson "locked up" for the food strike.  (Id.)  Lynch prescribed him medication.  (Id. ¶ 37.)

The next day, Johnson saw Defendant Mahli, who stated that he did not know what was causing Johnson's symptoms and that he was on a waiting list to be seen at an outside hospital. (Id. ¶ 38.)  Mahli speculated that the symptoms may be caused by Johnson losing weight, but Johnson explained that his current weight was his natural weight.  (Id.)  Mahli prescribed him Ensure drinks, a stool softener, Fiber-Lax, and Dimenhydrinate.  (Id.)

Johnson went to see Mahli again shortly after this visit and Mahli allegedly stated, "you keep putting in sick-call slips and again I don't know what to do for you, what do you want me to do?"  (Id. ¶ 39.)  Johnson picked up a cup of water and asked Mahli if he could drink it in front of him to demonstrate the symptoms he was suffering.  (Id.)  Mahli allegedly responded, "no, you can't drink that here we don't know if you put something in it or not."  (Id.)  Johnson then asked if Mahli would get him a cup of water to drink but Mahli refused.  (Id.)  Johnson asked if Mahli would admit him for observation, but Mahli again refused.  (Id.)

The complaint alleges that Johnson suffered symptoms of varying severity every day between May 2020 and November 2021.  (Id. ¶ 40.)  In December 2021, he was called for a phone conference with an outside doctor.  (Id. ¶ 41.)  Mahli also participated in the conference and told the doctor that Johnson was being sent for an outside consultation because of his weight loss.  (Id.)  Johnson explained to the contrary that he thought his symptoms were being caused by drinking the prison's water.  (Id.)  Johnson was told on the call that he would be sent to an outside hospital in February 2022.  (Id.)

The medical department performed blood work on Johnson in February and March of 2022 but he was not taken to an outside hospital.  (Id. ¶ 42.)  Johnson asked the nurse who was

treating him why he had not been sent to the hospital and the nurse said that he was anemic and that he needed to put in a sick call slip to be seen by a prison doctor.  (Id.)

Johnson put in a sick-call slip and was seen by Defendant Nalley on March 14, 2022.  (Id. ¶ 43.)  Nalley explained to Johnson that he would be seen at an outside hospital soon and that the prison medical staff knew he had been anemic since 2016.  (Id.)  Nalley allegedly stated that the staff believed his symptoms were caused by his anemia.  (Id.)  Johnson was sent to an outside hospital later in March 2022, where he was diagnosed with Helicobacter pylori ("H. pylori"), a bacterial infection.  (Id. ¶ 44.)

The complaint asserts claims for violation of the Eighth Amendment and negligence under Pennsylvania law.  Johnson seeks damages, injunctive relief, and declaratory relief.  (Id. at 26.)  The complaint names Mahli, Nalley, Lynch, and several other officials as defendants.  (Id. at 1–3.)  The defendants moved to dismiss the complaint through three separate motions on September 27, 2022, January 24, 2023, and February 8, 2023.  (Doc. Nos. 14, 26, 31.)

The Court resolved the motions to dismiss on August 1, 2023.  (Doc. Nos. 40–41.)  The Court dismissed all official capacity claims and all claims against the non-medical defendants, but allowed the case to proceed against Defendants Mahli, Nalley, and Lynch.  (Id.)  In doing so, the Court denied without prejudice Mahli and Nalley's argument that Johnson's negligence claim should be dismissed for failure to file a certificate of merit because they had not provided thirty days' notice prior to seeking dismissal as required by Pennsylvania Rule of Civil Procedure 1042.7(a)(4).  (Doc. No. 40 at 11–12.)

Mahli and Nalley answered the complaint on October 5, 2023, and Lynch answered the complaint on October 13, 2023.  (Doc. Nos. 46–47.)  Mahli and Nalley then filed a renewed motion to dismiss Johnson's negligence claim for failure to file a certificate of merit on January

18, 2024, arguing that dismissal is appropriate because the thirty-days' notice requirement has

now been satisfied.  (Doc. Nos. 55–56.)  Johnson has not responded to the motion and the

deadline for doing so has expired under the Local Rules.  The motion to dismiss is accordingly

ripe for judicial review.

## II.     LEGAL STANDARDS

### A.     Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of

the claim and the grounds upon which it rests.  See Phillips v. County of Allegheny, 515 F.3d

224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a

plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure

8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled

to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure

12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P.

12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all

factual allegations in the complaint and all reasonable inferences that can be drawn from them,

viewed in the light most favorable to the plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662, 679

(2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  To prevent

dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims

are facially plausible.  See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203,

210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the

defendant is liable for the alleged misconduct: "where the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has

not 'show[n]' – 'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (citing Fed. R.

Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must

take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to

state a claim; (2) identify any conclusory allegations contained in the complaint that are "not

entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual

allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation

marks omitted).  The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to

dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached

to the complaint, matters of public record, as well as undisputedly authentic documents if the

complainant's claims are based upon these documents."  See Mayer v. Belichick, 605 F.3d 223,

230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d

1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the Court must be mindful that a document

filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Pro

se complaints, "however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers."  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle,

429 U.S. at 106).

**B.    Section 1983 Standard**

Section 1983 is the vehicle by which private citizens may seek redress for violations of

federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.  The statute

states, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors."  See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002)).  To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

## III.   DISCUSSION

Under Pennsylvania Rule of Civil Procedure 1042.3, a plaintiff must file a certificate of merit in any case in which the plaintiff alleges that "a licensed professional deviated from an acceptable professional standard" within sixty days after filing the complaint.  See Pa. R. Civ. P. 1042.3.  Rule 1042.3 is substantive law that must be applied by United States district courts when considering a claim of malpractice or negligence under Pennsylvania law.  See Liggon-Redding v. Estate of Sugerman, 659 F.3d 258, 264–65 (3d Cir. 2011).  Defendants may not seek dismissal of a claim based on the lack of a certificate of merit unless the defendants have provided thirty days' notice prior to seeking dismissal.  See Pa. R. Civ. P. 1042.7(a)(4); Schmigel v. Uchal, 800 F.3d 113, 124 (3d Cir. 2015).

The Court agrees with Nalley and Mahli that dismissal of Johnson's negligence claim for failure to file a certificate of merit is appropriate.  Johnson has not filed a certificate of merit, nor

has he filed any other document that can be liberally construed as a certificate of merit.  There is also no basis to deny the motion to dismiss for lack of notice.  Although Nalley and Mahli's previous motions to dismiss did not satisfy the notice requirements of Rule 1042.7(a)(4), no such defect is present with respect to the instant motion: Nalley and Mahli filed notices of their intent to move to dismiss the complaint for failure to file certificates of merit on January 24, 2023, and February 7, 2023, respectively, and did not file the instant motion to dismiss until January 18, 2024.  <u>See</u> (Doc. Nos. 25, 30, 55).  Accordingly, the Court will dismiss Johnson's negligence claims against Nalley and Mahli for failure to file certificates of merit as required by Pennsylvania Rule of Civil Procedure 1042.3.  Dismissal of the claims will be without further leave to amend because the claims fail as a matter of law.  <u>See Foman v. Davis</u>, 371 U.S. 178, 182 (1962) (noting that leave to amend may be denied where amendment would be futile).

## IV.    CONCLUSION

For the foregoing reasons, the motion to dismiss filed by Defendants Nalley and Mahli will be granted and Johnson's negligence claims against those Defendants will be dismissed without further leave to amend.  An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania