IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDWARD JOHNSON,** | : | |
|     **Plaintiff** | : | |
| | : | No. 1:22-cv-01048 |
|     v. | : | |
| | : | (Judge Kane) |
| **MEDICAL DOCTOR MALHI, et al.,** | : | |
|     **Defendants** | : | |

**MEMORANDUM**

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983. Pro se Plaintiff Edward Johnson ("Johnson") alleges deliberate indifference in violation of the Eighth Amendment and negligence under Pennsylvania law related to an alleged failure to diagnose Johnson's bacterial infection for a significant period of time by Defendants Malhi,[1] Nalley, and Lynch ("Defendants"), who were all acting as medical professionals in Huntingdon County State Correctional Institution ("SCI-Huntingdon") during the period of time relevant to this case. Presently before the Court are Defendants' motions for summary judgment and Johnson's motion for sanctions. For the following reasons, the Court will deem Johnson's motion for sanctions withdrawn, grant Defendants' motions for summary judgment, and close this case.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

Johnson initiated this case through the filing of a complaint on June 27, 2022, which the Court received and docketed on July 6, 2022. (Doc. No. 1.) On August 1, 2023, the Court resolved three motions to dismiss filed by Defendants, dismissing all official capacity claims and all claims against the non-medical defendants, but allowing the case to proceed against

---

[1] Previous opinions and orders in this case have spelled this Defendant's name "Mahli" in accordance with the spelling used in Plaintiff's pleadings. The Court now uses the correct spelling of "Malhi."

Defendants Malhi, Nalley, and Lynch.  (Doc. Nos. 40–41.)  The Defendants[2] answered the complaint on October 5, 2023, and October 13, 2023.  (Doc. Nos. 46–47.)  Defendants Malhi and Nalley subsequently moved to dismiss Johnson's negligence claim for his failure to file a certificate of merit as required by the Pennsylvania Rules of Civil Procedure.  (Doc. No. 55.)  The Court granted the motion and dismissed the negligence claim against Defendants Malhi and Nalley on February 20, 2024.  (Doc. Nos. 58–59.)

On April 12, 2024, Johnson moved for sanctions against the Defendants for their perceived failure to comply with the Federal Rules of Civil Procedure during the discovery process.  (Doc. No. 70.)  The Defendants then moved for summary judgment through two separate motions on June 13, 2024, and August 31, 2024.  (Doc. Nos. 77, 86.)  While these motions were pending, Defendants Malhi and Nalley filed a suggestion of bankruptcy and request to stay, noting that the company that employed them during the period relevant to Johnson's claims, Wellpath LLC ("Wellpath"), had filed a voluntary petition for relief under 11 U.S.C. § 11 in the United States Bankruptcy Court for the Southern District of Texas ("the Bankruptcy Court"), and that this case was accordingly subject to an automatic stay pursuant to 11 U.S.C. § 362(a)(1).  (Doc. No. 96.)  The Court granted the motion and stayed and administratively closed the case on February 25, 2025.  (Doc. No. 100.)

On May 16, 2025, Defendants Malhi and Nalley provided a status report to this Court representing that the automatic stay no longer applied because the Bankruptcy Court had issued an order on May 1, 2025, approving Wellpath's Chapter 11 plan of reorganization.  (Doc. No. 101.)  Based on this status report, the Court issued an order on July 9, 2025, reopening the case

---

[2]  Because all other Defendants have been dismissed from the case, the Court will refer to Defendants Malhi, Nalley, and Lynch as "the Defendants" throughout the remainder of this opinion.

2

and stating that the pending motions for summary judgment and motion for sanctions would be resolved in due course. (Doc. No. 103.) All three motions are ripe for judicial review.

## II.   MOTION FOR SANCTIONS

At the outset, the Court will deem Johnson's motion for sanctions withdrawn. Under Local Rule 7.5., a motion must be deemed withdrawn if it is not accompanied by a supporting brief within fourteen days. See M.D. PA. L.R. 7.5. Here, Johnson filed his motion for sanctions on April 12, 2024, see (Doc. No. 70), but never filed a brief in support of the motion. The motion is accordingly deemed withdrawn in accordance with Local Rule 7.5.

## III.   MATERIAL FACTS[3]

Johnson was incarcerated in SCI-Huntingdon at all relevant times. (Doc. No. 87 ¶ 8; Doc. No. 95 ¶ 8.) Johnson's symptoms began in May 2020. (Doc. No. 79 ¶ 1; Doc. No. 90 ¶ 1.) On May 21, 2020, Jonathan Isenberg, a non-party nurse, told him to stay hydrated and stated that he would be placed on sick call. (Doc. No. 79 ¶ 2; Doc. No. 90 ¶ 2.)[4] Later that day, Defendant Nalley, a physician's assistant, saw Johnson regarding his complaints of upper abdominal pain.

---

[3] Unless otherwise noted, the background herein is derived from the parties' Local Rule 56.1 statement of facts. (Doc. Nos. 79, 87, 90, 95.) Although Plaintiff has filed statements of material facts responding to the Defendants' statements as required by Local Rule 56.1, see (Doc. Nos. 90, 95), his responses to many of the Defendants' factual assertions do not respond to the assertions or cite any contradictory evidence and instead simply state that the Defendants' assertions are "argumentative and arbitrary," see (Doc. No. 90 ¶¶ 3, 5–15; 19–30; 34–35), or "misleading," see (Doc. No. 90 ¶¶ 36, 38). These conclusory and unsupported assertions are not sufficient to create a genuine dispute of material fact, and the Court will accordingly treat the Defendants' assertions as undisputed where Johnson has provided one of these responses.

[4] Defendants Malhi and Nalley assert that Isenberg "educated" Johnson to stay hydrated. (Doc. No. 79 ¶ 2.) Johnson takes issue with the use of the verb "educated," but does not dispute that the conversation between Isenberg and Johnson occurred. (Doc. No. 90 ¶ 2.)

(Doc. No. 79 ¶ 3; Doc. No. 90 ¶ 3.)  Nalley prescribed Simethicone and ordered a complete blood count and comprehensive metabolic panel.  (Doc. No. 79 ¶ 4; Doc. No. 90 ¶ 4.)[5]

On June 29, 2020, Correctional Officer Todaro made Johnson fill out a sick call slip based on his purported inability to work.  (Doc. No. 79 ¶ 5; Doc. No. 90 ¶ 5.)  Todaro delivered the sick call slip to the prison's medical department.  (Id.)  Defendant Nalley then came to Johnson's cell on July 1, 2020, based on his complaints of fatigue.  (Doc. No. 79 ¶ 6; Doc. No. 90 ¶ 6.)

On July 21, 2020, Nalley ordered several tests performed on Johnson, including a complete blood count, a comprehensive metabolic panel, a thyroid stimulating hormone test, a Vitamin D test, a Vitamin B12 test, and a Folate test.  (Doc. No. 79 ¶ 8; Doc. No. 90 ¶ 8.)  The testing showed that Johnson had a Vitamin D deficiency, so Nalley prescribed Vitamin D3 1000u.  (Doc. No. 79 ¶ 9; Doc. No. 90 ¶ 9.)

On July 28, 2020, Johnson was seen by Fawn Lynn Baldauf ("Baldauf") for a sick call related to his complaints of weakness and an inability to burp.[6]  (Doc. No. 79 ¶ 10; Doc. No. 90 ¶ 10.)  Baldauf's notes from the sick call indicated that Johnson stated he was short of breath but that this was inaccurate because his actual symptom was an inability to breathe deeply when he needed to burp.  (Id.)  Baldauf prescribed Omeprazole.  (Doc. No. 79 ¶ 11; Doc. No. 90 ¶ 11.)

On July 30, 2020, Johnson attended a sick call with complaints of weakness, fatigue, dizziness, and gas.  (Doc. No. 79 ¶ 12; Doc. No. 90 ¶ 12.)  Defendant Malhi, a doctor in the prison, took Johnson's vitals and performed an EKG.  (Doc. No. 79 ¶ 13; Doc. No. 90 ¶ 13.)

---

[5] Johnson asserts that this fact is "evidence of denial [and] a delayed treatment of medical care and treatment," but does not dispute the fact.  (Doc. No. 90 ¶ 4.)

[6] The Defendants' statement of material facts does not specify Baldauf's position.

4

Malhi expressed concern about Johnson's low weight and noted that Johnson had seen a physician's assistant a few weeks earlier and had begun taking Prilosec. (Id.) Malhi prescribed Ensure or Boost the following day due to his low weight. (Doc. No. 79 ¶ 14; Doc. No. 90 ¶ 14.)

On August 5, 2020, Baldauf saw Johnson based on complaints of gas and bloating. (Doc. No. 79 ¶ 15; Doc. No. 90 ¶ 15.) Johnson stated that he did not have these issues when he drank bottled water. (Id.) Defendant Malhi then evaluated Johnson again on August 12, 2020, based on his complaints of bloating and not being able to burp. (Doc. No. 79 ¶ 16; Doc. No. 90 ¶ 16.)[7] Medical officials prescribed Johnson Zofran for nausea on August 18, 2020. (Doc. No. 79 ¶ 17; Doc. No. 90 ¶ 17.)[8]

On August 18, 2020, Johnson informed registered nurse Isaias Vargas about his issue with drinking water and stated that he was allergic to bleach. (Doc. No. 79 ¶ 19; Doc. No. 90 ¶ 19.) Johnson stated that when he drank tap water in the prison, his stomach spasmed and made it difficult to breathe. (Id.) Johnson described it as a ball in his stomach and stated that he was unable to burp. (Id.) Vargas prescribed "bentyl and Gaviscon." (Id.) On October 22, 2020, Johnson attended sick call, and medical professionals noticed a marked improvement in his condition, as his symptoms had subsided, he had gained weight, and he felt stronger. (Doc. No. 79 ¶ 20; Doc. No. 90 ¶ 20.)

---

[7] Johnson states that this factual assertion is "contrary to the Plaintiff's actual complaint of serious abdominal pain," but he does not cite any evidence to contradict the assertion. (Doc. No. ¶ 16.) The factual assertion is accordingly undisputed.

[8] Johnson asserts that "[t]he allege prescription of Zofran for nausea supports the fact that this Plaintiff was denied proper medical treatment as provided by the outside hospital after 2 years of pain and suffering of the ailment that was addressed and treated by the outside hospital," (Doc. No. 90 ¶ 17), but does not dispute the fact that Zofran was prescribed.

Johnson next attended sick call on January 22, 2021, with complaints of "gassy and bubbl[y] feelings." (Doc. No. 79 ¶ 21; Doc. No. 90 ¶ 21.) Johnson again attended sick call on March 1, 2021, with complaints of bloating, cramping, difficulty burping, nausea, difficulty eating, and changes in his bowel movements. (Doc. No. 79 ¶ 22; Doc. No. 90 ¶ 22.) Johnson stated that he needed to drink an excessive amount of water to burp when he felt bloated. (Id.)

On March 22, 2021, Malhi examined Johnson because he was underweight and complaining of upper gastrointestinal symptoms. (Doc. No. 79 ¶ 23; Doc. No. 90 ¶ 23.) Johnson told Malhi that he needed to drink approximately a gallon of water a day to be able to burp. (Id.) Johnson stated that the Prilosec was not helping his acid reflux symptoms, but that Simethicone was helping. (Id.) Malhi ordered routine lab tests and an upper gastrointestinal endoscopy. (Doc. No. 79 ¶ 24; Doc. No. 90 ¶ 24.)

Johnson next attended sick call on May 6, 2021, with complaints that he was unable to burp. (Doc. No. 79 ¶ 25; Doc. No. 90 ¶ 25.) Johnson stated that he was drinking a large amount of water to make himself burp and that he felt better when he was able to burp. (Id.) He stated that it occasionally felt like there was something stuck in his throat and that it sometimes felt like food needed to come back up. (Id.) On May 19, 2021, Defendant Malhi met with Johnson to review his March 21, 2021, lab work. (Doc. No. 79 ¶ 26; Doc. No. 90 ¶ 26.)

On June 22, 2021, Johnson returned to sick call complaining that he was unable to eat and was losing weight. (Doc. No. 79 ¶ 27; Doc. No. 90 ¶ 27.) Malhi renewed his Protonix and stated that he was scheduled to see an outside gastroenterologist. (Doc. No. 79 ¶ 28; Doc. No. 90 ¶ 28.) Johnson returned to sick call on August 11, 2021, with complaints that he was unable to burp and had a tight sensation in his abdomen. (Doc. No. 79 ¶ 29; Doc. No. 90 ¶ 29.) Nalley

examined Johnson and noted on his file that he was scheduled to see an outside gastroenterologist. (Id.)

Johnson returned to sick call on November 16, 2021, for his GI symptoms and was examined by Defendant Malhi. (Doc. No. 79 ¶ 30; Doc. No. 90 ¶ 30.) Johnson reported that his symptoms had improved but were not completely gone. (Doc. No. 79 ¶ 31; Doc. No. 90 ¶ 31.)[9]

On January 5, 2022, Johnson returned to sick call with complaints of nausea and vomiting. (Doc. No. 79 ¶ 32; Doc. No. 90 ¶ 32.)[10] Johnson was then seen again on January 12, 2022, and examined by a gastroenterologist through a telemedicine appointment. (Doc. No. 79 ¶ ¶ 33; Doc. No. 90 ¶ 33.)[11] Johnson was scheduled for an esophagogastroduodenoscopy ("EGD"). (Id.)

Johnson's EGD was completed on April 13, 2022. (Doc. No. 79 ¶ 34; Doc. No. 90 ¶ 34.) Johnson was then seen by Defendant Nalley on April 27, 2022, for epigastric pain radiating towards his navel. (Doc. No. 79 ¶ 35; Doc. No. 90 ¶ 35.) Johnson was diagnosed with an H. Pylori infection on April 28, 2022. (Doc. No. 79 ¶ 36; Doc. No. 90 ¶ 36.)[12] The medical

---

[9] Johnson states that he "did not report better symptoms" until he was later treated in the hospital for an H. Pylori infection, but he offers no evidence to support this assertion. (Doc. No. 90 ¶ 31.) His conclusory denial of Defendants' factually supported assertion is not sufficient to create a genuine issue of material fact, and the fact is accordingly undisputed.

[10] Johnson asserts that this fact "is a showing of proof that this Plaintiff was made to suffer pain and suffering due to the actions of the defendants to provide medical care and treatment," (Doc. No. 90 ¶ 32), but does not dispute the accuracy of the factual assertion.

[11] Johnson asserts that this is "more proof that the defendant refused to treat him for H. Pylori infection," (Doc. No. 90 ¶ 33), but does not dispute the factual assertion.

[12] Johnson asserts that his factual assertion is "misleading" because the infection was diagnosed by staff at an outside hospital rather than the Defendants, but does not dispute that the H. Pylori diagnosis was made on this date. (Doc. No. 90 ¶ 36.)

professionals treating him prescribed him Clarithromycin and Amoxicillin. (Id.) On May 12, 2022, Defendant Malhi noted that the H. Pylori infection was treated. (Doc. No. 79 ¶ 38; Doc. No. 90 ¶ 38.)[13]

At all times relevant to this case, Defendant Lynch, a registered nurse, was employed as Registered Nurse Supervisor in SCI-Huntingdon. (Doc. No. 87 ¶ 9; Doc. No. 95 ¶ 9.)[14] Lynch asserts that in this role he did not treat Johnson, and that Johnson cannot produce any evidence that he was personally involved in treating him or that he prescribed him medication or called him to the medical department as alleged. (Doc. No. 87 ¶¶ 34–36.) Johnson disputes these contentions in conclusory fashion, but does not produce any evidence to controvert the assertions. See (Doc. No. 95 ¶¶ 34–36).

Johnson filed two grievances during the period of time relevant to this case. (Doc. No. 87 ¶ 17; Doc. No. 95 ¶ 17.)[15] Johnson concedes that one such grievance, Grievance Number 878337, "has no bearing" on exhaustion in this case. (Doc. No. 95 ¶ 19.) Johnson filed the other grievance, Grievance Number 972589, on March 21, 2022, and it was rejected on the same day because it was untimely, it grieved different events in the same grievance, and it grieved issues that had previously been grieved in Grievance Number 878337. (Doc. No. 87 ¶¶ 25–26; Doc.

---

[13] Johnson asserts that this is "misleading because Dr. Malhi noted something that he failed to diagnose[] and treat for a period of 2 years," but does not dispute the fact that the H. Pylori infection was successfully treated as of May 12, 2022. (Doc. No. 90 ¶ 38.)

[14] Johson contends that Lynch "has provided different versions of his duties" in this job, but does not dispute the fact that Lynch was the Registered Nurse Supervisor. (Doc. No. 95 ¶ 9.)

[15] Johnson asserts that he "has no administrative remedies at his disposal" because "administrative remedies have been denied," but does not dispute the contention that he only filed two grievances during the relevant period. (Doc. No. 95 ¶ 17.)

8

No. 95 ¶¶ 25–26.)[16] Johnson appealed the rejection to the facility manager and the Department of Corrections' Secretary's Office of Inmate Grievances and Appeals ("SOIGA"), both of which upheld the rejection and did not consider the grievance on the merits. (Doc. No. 87 ¶¶ 28–31; Doc. No. 95 ¶¶ 28–31).[17]

## IV.     LEGAL STANDARD

### A.     Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) requires the Court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). A disputed fact is "material" if proof of its existence would affect the outcome of the case under applicable substantive law. See id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). A dispute of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1287–88 (3d Cir. 1991).

When determining whether there is a genuine dispute of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party. See Moore v.

---

[16] Johnson contends that the rejection of the grievance shows that he "exhausted administrative remedies," but does not dispute the fact that it was rejected or the basis for the rejection. (Doc. No. 95 ¶¶ 25–26.)

[17] Johnson argues that the administrative decisions were incorrect on the procedural questions at issue, but does not dispute that the appeals were denied. (Doc. No. 95 ¶¶ 28–31.)

9

Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine dispute of material fact, the nonmoving party is required to go beyond his pleadings with affidavits, depositions, answers to interrogatories, or the like in order to demonstrate specific material facts that give rise to a genuine dispute. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case that it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether a dispute of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. See White, 862 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. See id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement

10

required to be served by the moving party will be deemed to be admitted." See L.R. 56.1.  The Rule further requires the inclusion of references to the parts of the record that support the statements.  See id.

A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant.  These rules apply with equal force to all parties.  See Sanders v. Beard, No. 09-cv-01384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (stating that pro se parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-cv-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (explaining that pro se parties must follow the Federal Rules of Civil Procedure).

B.     **Section 1983 Standard**

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.  The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

See id.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors."  See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002)).  To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the

United States. See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

## V. DISCUSSION

Defendants Malhi and Nalley argue that they are entitled to summary judgment because: (1) Johnson has not produced any expert testimony supporting his contention that they were deliberately indifferent to a serious medical need; and (2) the undisputed factual record shows that they were not deliberately indifferent to a serious medical need. (Doc. No. 78.) Defendant Lynch argues that he is entitled to summary judgment because: (1) the undisputed factual record shows that he was neither deliberately indifferent to a serious medical need nor negligent; (2) Johnson failed to exhaust administrative remedies; and (3) he was not personally involved in the alleged violations of Johnson's civil rights. (Doc. No. 88.)

The Court will begin its analysis with the merits of Johnson's claims. Because the Court ultimately concludes that the undisputed evidence of record shows that Defendants were neither deliberately indifferent to a serious medical need nor negligent, the Court need not consider Defendant Lynch's additional arguments regarding exhaustion of administrative remedies or personal involvement.

### A. Deliberate Indifference

To succeed on a deliberate indifference claim, a plaintiff must establish "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." See Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention." See Monmouth Cnty. Corr. Institutional

12

Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  A prison official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  See Farmer v. Brennan, 511 U.S. 825, 837 (1994).  "A plaintiff's mere disagreement as to the proper medical treatment" is not sufficient to support a deliberate indifference claim.  See Lanzaro, 834 F.2d at 346.  Courts will not "second-guess the propriety or adequacy of a particular course of treatment" because such a decision is left to the professional judgment of the medical providers.  See Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979).  A doctor's failure to correctly or timely diagnose an inmate's medical condition is only actionable as an Eighth Amendment claim if the defendant acted with deliberate indifference.  See Estelle v. Gamble, 429 U.S. 97, 105–06 (1976).

Based on the undisputed evidence of record, the Court finds that the Defendants are entitled to summary judgment with respect to Johnson's deliberate indifference claim.  Johnson's claim is based on the Defendants' purported failure to timely diagnose his H. Pylori infection, but the evidence of record shows that the Defendants provided prompt, extensive treatment of Johnson's symptoms prior to the ultimate diagnosis of the infection, including prescribing various medications, referring him to outside specialists, and ordering numerous tests to determine the cause of the symptoms.  This evidence shows that Defendants did not act with deliberate indifference to Johnsons' medical condition.

      **B.**     **Malpractice**

Under Pennsylvania law, medical malpractice, as a form of negligence, requires proof that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; (3)

the defendant's breach was the proximate cause of the plaintiff's injuries; and (4) the breach caused the plaintiff actual damages. See Quinby v. Plumsteadville Family Practice, Inc., 907 A.2d 1061, 1070 (Pa. 2006). "With all but the most self-evident medical malpractice actions there is also the added requirement that the plaintiff must provide a medical expert who will testify as to the elements of duty, breach, and causation." Id.

The doctrine of res ipsa loquitur, meaning literally "the thing speaks for itself," provides a limited exception to the requirement of expert testimony in a medical malpractice action. See id. at 1071–72. In order for the doctrine of res ipsa loquitur to apply, the plaintiff must establish three elements: "(a) the event is of a kind which ordinarily does not occur in the absence of negligence; (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff." See id. at 1071 (quoting RESTATEMENT (SECOND) OF TORTS § 328(D)). The "key" to the res ipsa loquitur doctrine "is that a sufficient fund of common knowledge exists within a jury of laypersons to justify raising the inference" of negligence. See Toogood v. Owen J. Rogal, D.D.S., P.C., 824 A.2d 1140, 1145 (Pa. 2003) (plurality opinion).

In this case, Johnson has not presented any expert witnesses to support his malpractice claim. Thus, he must rely on the res ipsa loquitur doctrine to prove his claim. His claim, however, plainly fails to meet the res ipsa loquitur standard. Johnson's claim is based on the treating medical professionals'[18] failure to timely diagnose his H. Pylori infection. There is

---

[18] The malpractice claim has been dismissed against Defendants Malhi and Nalley and accordingly proceeds only against Defendant Lynch. (Doc. Nos. 58–59.) The Court assumes, for purposes of viewing the facts in the light most favorable to Johnson as the nonmovant, that liability for the actions of the other treating medical professionals may be imputed to Lynch for the negligence claim under a respondeat superior theory.

clearly not a "sufficient fund of common knowledge" among lay people as to how and when H. Pylori infections must be diagnosed to permit an inference of negligence without expert testimony.  See Toogood, 824 A.2d at 1145.  The Court doubts that a reasonable lay person would be able to define H. Pylori or its symptoms, let alone understand the circumstances under which it is appropriate to test for an H. Pylori infection.  Thus, because Johnson has not presented any expert witnesses to support his malpractice claim and the facts of the case are not appropriate to invoke the res ipsa loquitur doctrine, the Court will grant Defendant Lynch summary judgment on the malpractice claim.

## VI.   CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motions for summary judgment, deem Johnson's motion for sanctions withdrawn, and close this case.  An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania